KIMBALL, Respondent, v. SWANSON and others, Appellants.

*No. 249. Argued April 30, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 375.)

474

476

For the appellants there were briefs by *Braden & English* of Lake Geneva, and oral argument by *James L. English.*

For the respondent there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Richard H. Pfeil.*

ROBERT W. HANSEN, J. The various aspects of this case are like pieces of a jigsaw puzzle. Fitting them together is made more difficult because the shape and form of each such piece is in sharp dispute. The case involves an agreement for the sale of the real estate and personal property of the Kimball Kraft boat service company in Walworth. As to each matter in dispute, the seller gives one account, the purchaser another. However, the assembling of the jigsaw pieces is aided by keeping in mind that, as to each and every issue as to fact, the trial court accepted the testimony of the seller and rejected the testimony of the buyers. In each instance, his findings are supported by the testimony of the seller and her son, and so find support in the record. The trial court chose to accept the testimony of the Kimballs, and reject the testimony of the Swansons. The judgmental factor involved is that of comparative credibility and the trial court, which had the opportunity to observe the witnesses and their manner of testifying, was in a better position to determine credibility than a reviewing court which had only the transcribed record before it. We will not deal further with the question of whose testimony was to be believed, and will deal only with the issue of whether the plaintiff's testimony sufficiently supports the findings made.

*Modification of contract.*

A principal issue on this appeal is whether or not there was a valid oral modification of the written contract for the purchase of real estate. The trial court found that there was such valid modification.[1] Such finding is to be sustained unless it is contrary to the great weight and clear preponderance of the evidence.[2] Accepting the testimony of the plaintiff and her son, and rejecting the contrary testimony of the defendants, the trial court had ample testimony in the record to support its finding of oral modification of the written contract. Plaintiff and her son testified that Earl Swanson had stated at the March 20th meeting that his son, Richard, could act for him. The plaintiff testified that Richard stated that time was not a factor, possession of the premises having been turned over to the Swansons. Plaintiff's son, Brian, testified that Richard Swanson stated there was no need to be concerned over closing on the exact date mentioned in the contract. Plaintiff and her

[1] ". . . that it was agreed that in as much as he [the defendant] had possession of the premises that the time for closing was immaterial and that the deadline of May 15th or any provisions of the written offer would be changed to accommodate the plaintiff to procure the certified survey and abstract of title commitments providing she procured the same at any time before she looked upon the defendant to execute the land contract."

". . . the plaintiff relied upon defendants' representation that time was not of the essence, as defendants were in possession and plaintiff relied upon this representation; and there was a timely tender of performance by plaintiff to defendants of all obligations in the various parts of the one general transaction."

[2] "The trial herein was before the court, and when a trial judge finds there has been an oral modification or substitution of a written contract, this court in determining whether or not to sustain the findings will apply the rule that a finding by the trial court will be sustained unless it is contrary to the great weight and clear preponderance of the evidence. . . ." *Bunbury v. Krauss* (1969), 41 Wis. 2d 522, 527, 164 N. W. 2d 473. *See also: Baldwin v. Anderson* (1968), 40 Wis. 2d 33, 41, 161 N. W. 2d 553.

son testified that Richard stated that they could have as much time as was needed to clear up the title. Accepting the Kimball's testimony, as the trial court did, furnishes adequate support in the record for the finding of oral modification of the contract to give the Kimballs the time needed to furnish marketable title. For the same reason, Earl Swanson's denial that he authorized his son, Richard, to consent to a delay fails. The Kimballs testified to the contrary, and their account, not Earl's, was accepted by the trial court. The trial court finding that there was an oral modification of the contract which dispensed with any necessity for a speedy performance is sustained and upheld. We need not take up the question of whether the tender of performance in September was within the reasonable time rule,[3] and the corollary rule requiring notice as to the expected date of performance,[4] because the trial court finding is that plaintiff was given as much time as necessary to clear the title defect.

*Form of judgment.*

A number of objections are made to the form of judgment, and specific provisions contained therein. One

[3] "The vendee may waive strict performance on the part of the vendor of provisions of the contract as to the time of performance in such way as to give the vendor a reasonable time within which to remove defects in the title." 55 Am. Jur., *Vendor and Purchaser,* p. 720, sec. 274.

[4] "When the right to insist upon the performance at the time specified has been waived, neither party can terminate the contract for the failure of the other to perform until he has demanded performance and given the other party a reasonable time and opportunity to comply with the demand. . . ." *Id.* p. 720, sec. 274. This rule has been adopted in Wisconsin: ". . . However, time may be made of the essence after breach of the contract by reasonable notice to the person in default to perform. . . ." *Ochiltree v. Kaiser* (1963), 20 Wis. 2d 191, 197, 121 N. W. 2d 890.

such objection is to the trial court's granting a money judgment against Bay Boats for the full amount specified in the bill of sale covering the personalty, with interest from April 1, 1966, the date on which the bill of sale was delivered. The contract provided for payment by installments, the full sum to be paid within three years, which would have been April 1, 1969. The contract also called for interest from April 1, 1966. Even if payments were offered while the entire matter was in dispute, the three-year period had expired at the time judgment was entered in this case. No payments had been made. Bay Boats had had the property involved since March of 1966, without payment. The granting of a money judgment in the full amount, with interest, was warranted, since Bay Boats was merely ordered to do what it would already have done if the dispute as to the transaction had not arisen.

Defendant Earl Swanson objects to the fact that the judgment calls for payments of $300 per month on the land contract, plus interest which had accrued on the delinquent monthly payments. The original land contract provided for payments of $300 per month to include both principal and interest. The trial court obviously took into account the fact that no payments under the contract had in fact been made, and that plaintiff has had neither the benefit of the property nor the money since the contract was entered into. The judgment of the trial court in this particular is confirmed.

The defendant Earl Swanson objects to the fact that the trial court in its judgment ordered specific performance, dating it from April 1, 1966. This included interest, taxes and fire insurance premiums from the April 1st date. In this opinion, we have held that the defendant was required to perform the contract entered into, orally modified as to the time element, as of September 29, 1966. He was not called upon to perform until clear

evidence of marketable title was furnished. Interest, taxes and insurance charges accrued during the period when the defect in the title was being cleared up by the plaintiff are to be paid by the plaintiff. The judgment is ordered modified to provide that the specific performance dates from September 29, 1966, with interest, taxes and fire insurance premiums accruing after such date to be paid by the defendant.

Defendant Earl Swanson further objects to that portion of the judgment which provided that he was to execute the land contract within twenty days of its delivery to the clerk of court, and to the trial court's revision of the judgment to provide for a money judgment and sale of the premises instead of reinstatement of the land contract monthly payments. As to the first point, the defendant secured both a review of the judgment by the trial court, and an appeal to this court, so that his claim of prejudice in these regards cannot stand. As to the entry of the money judgment, and the provisions for sale of the premises, the trial court apparently weighted heavily the fact that a three-year period had run and that only a money judgment could give to the plaintiff, an elderly lady, what she had every right to expect when she entered into the transaction with the Swansons for the sale of the Kimball Kraft boat service company. The revision of the judgment by the trial court, following motions for new trial and review of the judgment, is held to be reasonable, and is affirmed.

In dealing with the objections raised to the form of judgment, we have kept in mind that specific performance is an equitable remedy, addressed to the sound discretion of the court. This court has said that, in granting specific performance, " '. . . A court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts and founded on an adequate consideration, before it will inter-

pose with this extraordinary assistance.' " [5] In the exact form of the judgment entered in this type of action, the trial court has an area in which judicial discretion is to be exercised. Here the trial court was entitled to consider that plaintiff was facing a partial, not total, rescission of the transaction by which she gave up the boat service business which she had conducted since 1945. The buildings involved were constructed and used for the boat service business. That business she no longer had. Its customer lists, servicing of boats in storage, and right of access to the lake were all transferred to the purchaser of the business. The trial court specifically found that ". . . there was one general transaction between the plaintiff and defendants comprised of different related parts," and further that "Vivian Kimball was no business match for Earl Swanson and Brian Kimball and Richard Swanson were equally lacking in knowledge of business affairs." Obviously, considerations of fairness and equity, as well as adherence to established principles of applicable law, motivated the effort of the trial court to put the parties in the exact situation in which both would be if each had kept the agreements that were made. We commend the effort made and approve the result reached, with the single modification as to the date on which specific performance by the defendant was due.

*By the Court.*—Judgment modified as stated in the opinion and, as so modified, affirmed.

---

[5] *Mulligan v. Albertz* (1899), 103 Wis. 140, 143, 144, 78 N. W. 1093, quoted with approval in *McKinnon v. Benedict* (1968), 38 Wis. 2d 607, 617, 618, 157 N. W. 2d 665.